Robert W. SMITH, Plaintiff—Appellant,

v.

MIDLAND BRAKE, INC:, A DIVISION OF ECHLIN, INC., Defendant—Appellee,

Equal Employment Advisory Council, Amicus Curiae.

No. 96–3018.

United States Court of Appeals, Tenth Circuit.

March 13, 1998.

Submitted on the briefs: *

Les E. Diehl, of Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff–Appellant.

James Allan Smith, Daniel M. Shea, and Craig P. Siegenthaler, of Smith, Currie & Hancock, Atlanta, GA, and Mary Kathleen Babcock, of Foulston & Siefken Law Offices, Wichita, KS, for Defendant–Appellee.

Douglas S. McDowell, Ann Elizabeth Reesman, and Ellen Duffy McKay, of McGuiness & Williams, Washington, DC, filed an amicus curiae brief for the Equal Employment Advisory Council.

Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff Robert Smith alleges that his former employer, defendant Midland Brake, Inc., terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and Kansas state law on retaliatory discharge. The district court entered summary judgment for the defendant on all claims. Plaintiff appeals the order of summary judgment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

* After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

## BACKGROUND

Between 1986 and 1993, plaintiff Robert Smith was employed by the defendant, Midland Brake, Inc., in a light assembler position. During this time, plaintiff experienced problems with chronic dermatitis on his hands as well as some muscular injuries. As a result, his physicians placed restrictions on his work activities and on several occasions ordered him to stop working for limited periods. The defendant attempted to accommodate plaintiff's limitations by assigning him to duties within the light assembly department that involved less lifting and less exposure to irritants and by providing him compensation claim for the dermatitis on May 8, 1992. From May 6, 1992, until the time of his termination, plaintiff was on a leave of absence and was receiving workers' compensation benefits. On March 3, 1993, defendant agreed to pay plaintiff $20,000 to settle his workers' compensation claim for the dermatitis. On or about the same date, defendant terminated the plaintiff's employment with Midland Brake, citing an inability to accommodate his skin sensitivity.

The parties dispute exactly what happened between May 1992 and March 1993. Mr. Smith alleges that Midland Brake had a policy of giving employees who became disabled and could not perform their current positions priority over other employees for reassignment to open positions. He contends that there were numerous job openings at Midland Brake that should have been made available to him and asserts that defendant either could have obtained or did obtain releases from his physician for him to work in those positions. Midland Brake, on the other hand, contends that it made efforts to return plaintiff to work in different positions at the company but was unable to obtain a written release from plaintiff's physician allowing him to return to work.

On September 7, 1994, plaintiff filed a complaint in the United States District Court for the District of Kansas. In his complaint, plaintiff asserted that he was discharged in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*[1] In addition, plaintiff asserts that, in violation of Kansas law and public policy, he was discharged in retaliation for pursuing his workers' compensation claim. The district court entered summary judgment for the defendant on each of these claims. We hold that plaintiff has failed to establish a prima facie case under either the ADA or the ADEA, and affirm on each of those claims as discussed below. We also affirm the entry of summary judgment on the retaliatory discharge claim.

## DISCUSSION

■■■ We review a district court's grant of summary judgment de novo. *See Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir.1995). Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See id.;* Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### 1. ADA Claim

■■■ The ADA prohibits employers from discriminating against qualified individuals with disabilities, because of the disabilities, in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment. *See* 42 U.S.C. § 12112(a). To prevail on a claim of discriminatory discharge under the ADA, a plaintiff must establish (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, *i.e.,*

---

1. In his amended complaint, plaintiff also asserted violations of the Kansas state counterparts to the ADA and the ADEA, but he has not pursued those claims on appeal.

with or without reasonable accommodation, he is still able to perform the essential functions of his job; and (3) that his employer fired him because of his disability. *See White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995). A person is considered disabled within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). For the purposes of this appeal, we will assume that Mr. Smith is disabled within the meaning of the ADA. Nonetheless, we find that he is unable to set out a prima facie case under the ADA because he is unable, even with reasonable accommodation, to perform the essential functions of his job.

■ To be protected under the ADA, a plaintiff must demonstrate that he is a "qualified individual with a disability." 42 U.S.C. §§ 12111(8), 12112(a). This inquiry is twofold:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if ... we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable him to perform those functions.

*White*, 45 F.3d at 361–62 (citations omitted); *see also* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability"). Mr. Smith does not allege that he can perform the essential functions of his job in the light assembly department. In fact, he admits that because of his chronic dermatitis, his physicians considered him "permanently disabled" and unfit to work in that department.

*See* Pl.'s First Am. Compl., Appellant's App. Vol. I, Ex. A, at ¶ 16. Furthermore, Mr. Smith has not alleged that there are any reasonable accommodations that would enable him to perform the essential functions of his job. Thus, it is undisputed that Mr. Smith is not a "qualified individual with a disability" as that term is used in the ADA. There is no genuine issue as to this material fact.

■ Mr. Smith does not contest that he is no longer qualified for his old job, and he does not seek reinstatement to that position. Instead, he argues that the defendant is required, as a reasonable accommodation to his skin condition, to reassign him to another position at the company, outside of the light assembly department. We disagree.

■ Under the ADA and the corresponding guidelines promulgated by the Equal Employment Opportunity Commission (EEOC)[2], a reasonable accommodation may include reassignment to a vacant position. *See* 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii) (1997).[3] The guidelines state that, "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]." 29 C.F.R. Pt. 1630, App. § 1630.2(o); *see also id.* at Pt. 1630, App. § 1630.2(p) (defining undue hardship as "significant difficulty or expense in, or resulting from, the provision of the accommodation"). In other words, reassignment can be used as a means of accommodating a disabled employee when accommodating him in his current position is *possible*, but difficult for his employer. It follows that when it is not at all possible to accommodate an employee in his current position, there is no obligation to reassign.[4]

2. "As an administrative interpretation of the Act by the enforcing agency, [EEOC guidelines], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (citations and internal quotation marks omitted).

3. All our references to the C.F.R. are to the 1997 edition current at the time this opinion was drafted. The regulations we cite have not changed in any significant way since they were first promulgated in 1991 and 1992. *See* 29

C.F.R. Pt. 1614 (stating that source of Part 1614 is 57 Fed.Reg. 12646, Apr. 10, 1992, unless otherwise noted); *id.* Pt. 1630 (stating that source of Part 1630 is 56 Fed.Reg. 35734, July 26, 1991, unless otherwise noted).

4. We note, however, that reassignment is treated differently under section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, which prohibits federal agencies from discriminating against disabled individuals. *See generally Woodman v. Runyon*, 132 F.3d 1330 (10th Cir.1997). We discuss this aspect of the Rehabilitation Act in greater detail later in this opinion.

Here, it is undisputed that after the plaintiff's doctor ordered him to stop working in May 1992, no amount of accommodation would have made him qualified for his job in the light assembly department. Thus, Midland Brake is not obligated under the ADA to transfer plaintiff to another position.[5]

 In arguing that his employer should have accommodated him by reassigning him to a new position, plaintiff misconstrues the nature and purpose of the ADA. The Act is designed to combat discrimination against qualified disabled employees. *See* 42 U.S.C. § 12101 (congressional findings and purpose of the ADA); *id.* at § 12112 (general rule prohibiting discrimination against qualified individuals with disabilities). The Act does not require employers to accommodate every employee who becomes disabled, but rather, only those who are still capable, with reasonable accommodation if necessary, of performing the essential functions of their jobs in spite of their disabilities—*i.e., qualified* individuals with disabilities. The ADA does not prohibit an employer from terminating an individual who can no longer perform the essential functions of his position even with reasonable accommodation. Such individuals fall outside the scope of the Act's protection. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 807–09 (5th Cir.1997) (concluding that worker who could not perform essential functions of his current job and sought reassignment was not a qualified individual within the meaning of the ADA).[6] "[T]he duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995); *but see Gile v. United Airlines*, 95 F.3d 492, 498 (7th Cir.1996) (holding that ADA may obligate employer to reassign disabled employee who can no longer, even with reasonable accommodation, perform the essential functions of her job). The ADA "prohibits employment discrimination against qualified individuals with disabilities, no more and no less." *Foreman*, 117 F.3d at 810 (citations and internal quotation marks omitted); *see also Wernick v. Federal Reserve Bank*, 91 F.3d 379, 384 (2d Cir.1996) ("[In enacting the disability statutes,] Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons."); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."), *cert. denied*, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). Requiring employers to reassign disabled employees who no longer can perform their old jobs to substantially different positions goes beyond fighting discrimination. In the absence of clear direction from Congress, we decline to give the ADA the expansive interpretation advocated by plaintiff. *See Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (noting that Congress "knew how to provide for [affirmative action] in those instances where it wished to do so").

5. As a result, it is unnecessary for us to reach the question of whether plaintiff is qualified for the other positions to which he seeks reassignment.

6. The dissent takes issue with our citation of *Foreman*, stating that "the court [in *Foreman* ] concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him." This summary of the Fifth Circuit's decision implies that the court felt it had to examine the possibility of reassignment for a plaintiff who could not perform his old job. The *Foreman* court, however, reached several *alternative* conclusions, holding against Foreman on three separate grounds. The court first found that Fore-

man was not disabled. *See Foreman*, 117 F.3d at 804–807. Then, in the part of the opinion to which we refer above, the court *"[a]lternatively"* held that Foreman did not show that he was a qualified individual under the ADA. *Id.* at 807–09. Finally, the court also determined, as a third alternative holding, that Foreman failed to show the reassignments he requested would be reasonable accommodations. *See id.* at 809–10. Thus, the Fifth Circuit examined reassignment not because it believed it was required to do so, but rather because it chose to do so as a third means of holding against the plaintiff. *See id.* at 809 (*"[E]ven if* Foreman was disabled and qualified under the ADA, his requested accommodations are not reasonable." (emphasis added)).

 Of course, employers are free to voluntarily reassign employees to new positions even when the ADA does not require them to do so. Plaintiff next asserts that Midland Brake "had an existing company policy of priority reassignment of disabled employees to vacant positions," Appellant's Br. at 21, and urges us to find an ADA violation because his employer allegedly failed to follow its own policy in his case. He argues that the ADA requires employers to follow their own policies for dealing with injured workers, even when those policies exceed the explicit requirements of the ADA. In support of this position, plaintiff points to *School Board v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), a Rehabilitation Act case in which the Supreme Court stated, in a footnote:

> Although [employers] are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.

*Id.* at 289 n. 19, 107 S.Ct. at 1131 n. 19 (citations omitted). This dicta simply states the obvious: employers cannot discriminate against disabled employees by preventing them from applying for other positions on the same basis as non-disabled individuals. It also recognizes that, as a matter of administrative law, a governmental employer's failure to follow its own policies may give rise to an alternative claim, even when a claim under the disabilities statutes cannot succeed. *See Guillot v. Garrett,* 970 F.2d 1320, 1327 (4th Cir.1992) (interpreting *Arline* passage to mean, at most, that "government agencies and departments must abide by their own regulations and existing statutes"); *Carter v. Tisch,* 822 F.2d 465, 468–69 (4th Cir.1987) (rejecting plaintiff's Rehabilitation Act claim, but noting possible alternative claim that federal agency acted in arbitrary and capricious manner by terminating him). We decline to interpret the *Arline* footnote in a way that would impose an affirmative obligation on a private employer to find a new position for the disabled employee. Absent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA. "While [an employer] is free to exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law." *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995). To hold otherwise would discourage employers from developing their own plans for going beyond what federal law requires. "Employers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not work out." *Sieberns v. Wal–Mart Stores, Inc.,* 125 F.3d 1019, 1023 (7th Cir.1997); *see also Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 545 (7th Cir.1995) ("[I]f the employer ... goes further than the law requires ..., it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."). Moreover, Mr. Smith's allegation that his employer reassigned other disabled employees does not demonstrate discrimination based on disability. When all employees to which plaintiff compares himself are disabled, there is no logical inference of discrimination. *See Myers,* 50 F.3d at 284.

 Our decision that the ADA regulations do not require Midland Brake to reassign Mr. Smith is bolstered by a comparison of the EEOC regulations promulgated under section 501 of the Rehabilitation Act of 1973, Pub.L. No. 93–112, 87 Stat. 357 (codified as amended at 29 U.S.C. § 701 *et seq.*). The Rehabilitation Act prohibits discrimination against disabled employees by federal agencies, *see* 29 U.S.C. § 791 (codifying section 501 of the Act), and by programs receiving federal financial assistance, *see* 29 U.S.C. § 794 (codifying section 504 of the Act).[7]

---

7. As it was originally enacted in 1973, the Rehabilitation Act did not mention reassignment at all. *See Gonzagowski v. Widnall,* 115 F.3d 744, 748 (10th Cir.1997). In 1992, Congress amended the Rehabilitation Act to conform to the ADA's standards for employment discrimination, incorporating by reference the ADA's inclusion of reassignment as a possible reasonable accommodation. *See* 29 U.S.C. §§ 791(g), 794(d); *Gonzagowski,* 115 F.3d at 748.

Section 501 requires federal agencies to develop affirmative action programs for the hiring, placement, and advancement of individuals with disabilities. *See* 29 U.S.C. § 791(b). By contrast, neither section 504 of the Rehabilitation Act nor the ADA creates such affirmative action obligations. "It is well established both by the statutory language and Supreme Court decisions interpreting the [Rehabilitation] Act that federal employers have greater duties to accommodate disabled workers under section 501 than the duties owed by federal grantees under section 504 or those owed by employers under the ADA." *Woodman v. Runyon*, 132 F.3d 1330, 1343 (10th Cir.1997). Thus, while the ADA and the Rehabilitation Act *generally* are to be interpreted and applied consistently with one another, *see* 29 U.S.C. §§ 791(g), 794(d); 42 U.S.C. §§ 12117(b), 12201(a); *White*, 45 F.3d at 360 n. 5, the standards used to determine whether a federal employer has violated section 501 of the Rehabilitation Act will not always be identical to those employed in suits brought under section 504 or under the ADA.[8] *See, e.g., Southeastern Community College*, 442 U.S. at 410–411, 99 S.Ct. at 2369–70; *Woodman*, 132 F.3d at 1343. In particular, this court recently noted that "the meaning of reasonable accommodation ... may vary due to the heightened duties ascribed to federal employers under section 501." *Woodman*, 132 F.3d at 1338; *see also id.* at 1339 n. 8.

▮ In recognition of the federal employer's heightened duties toward disabled individuals, the EEOC has promulgated rules for reasonable accommodation under section 501 that are stricter than those promulgated under the ADA. According to these regulations, "[w]hen a nonprobationary [federal] employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency *shall* offer to reassign the individual to a funded vacant position" for which the

individual is qualified, unless doing so would impose an undue hardship on the agency. 29 C.F.R. § 1614.203(g) (emphasis added). Thus, section 501 of the Rehabilitation Act "imposes an obligation on the federal employer to offer reassignment" to employees who cannot perform their old jobs. *Gonzagowski*, 115 F.3d at 748. In this way, the Rehabilitation Act regulations differ from the ADA regulations, which do not expressly mandate reassignment in those circumstances. We find this difference significant. Section 1614.203(g) shows that the EEOC knows how to make reassignment mandatory when it wants to do so. *Cf. Southeastern Community College*, 442 U.S. at 411, 99 S.Ct. at 2369 (determining that Congress did not intend to impose affirmative action obligations in section 504 and noting that Congress "knew how to provide for [affirmative action] in those instances where it wished to do so"). Because clear instructions of the sort found in section 1614.203(g) are absent from section 1630.2(*o*), we find it unlikely that the EEOC intended reassignment to be mandatory under the ADA, except under the limited circumstances we describe above.

The dissent faults us for focusing on "one isolated sentence"[9] of the EEOC guidelines and accuses us of overlooking later language which states: "An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified...." 29 C.F.R. Pt. 1630, App. § 1630.2(*o*). This language, however, simply confirms that an employer *may* always *voluntarily* reassign an employee who can no longer perform her old job because of a disability. The discretionary or permissive nature of this provision becomes even more clear when contrasted with the mandatory language, "*shall* offer to

---

8. The notion that ADA claims and section 501 claims cannot always be resolved according to the same standards is recognized in the Rehabilitation Act itself, in the very provision that generally requires the cases to be resolved consistently. The Act specifies that ADA standards are to be applied in section 501 "*non* affirmative action employment discrimination" cases, 29 U.S.C. 791(g) (emphasis added), implying that the same

standards should not necessarily govern in cases that implicate the affirmative action obligations of federal employers.

9. *I.e.,* "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship." 29 C.F.R. Pt. 1630, App. § 1630.2(*o*).

reassign," found in section 1614.203(g) of the guidelines. *See* 29 C.F.R. § 1614.203(g).

█ For these reasons, we affirm the district court's entry of summary judgment for the defendant on Mr. Smith's ADA claim. We hold that under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job which he currently holds (or, as here, from which he was terminated), the employing entity has no obligation to consider reassigning him to another position. Under the current EEOC guidelines, the employer's obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.[10]

█ In conclusion of our discussion of Mr. Smith's ADA claim, we note that the district court seems to have relied at least in part on an estoppel theory when it entered summary judgment for the defendant. *See Smith v. Midland Brake,* 911 F.Supp. 1351, 1357–61 (D.Kan.1995). The district court pointed out that Mr. Smith had sought disability benefits from the Social Security Administration (SSA) several times between October, 1992, and April, 1993, certifying that he was "totally disabled and unable to work." *Id.* at 1356. Eventually, he was granted the benefits he sought.[11] We wish to make clear that under the law of this circuit, Mr. Smith is not judicially estopped from now making claims that are inconsistent with his prior representations to the SSA. *See United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th Cir.1986) ("The Tenth Circuit ... has rejected the doctrine of judicial estoppel."). Hence, any reliance by the district court on an estoppel theory was misplaced. We rely directly on the language of the Act and the accompanying EEOC regulations. The precise impact, if any, of prior SSA representations on a plaintiff's ADA claim is still an open question in this circuit and one that we do not decide today. For a discussion of how other circuits have handled the issue, see *Talavera v. School Board,* 129 F.3d 1214, 1217–1220 (11th Cir.1997).

### 2. ADEA Claim

█ Mr. Smith next claims that Midland Brake terminated him in violation of the ADEA. To establish a claim of age discrimination under the ADEA, a plaintiff must show that (1) he was within the protected age group at the time of the discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was filled by a younger person, or he was treated less favorably than younger employees. *See Gonzagowski v. Widnall,* 115 F.3d 744, 749 (10th Cir.1997). Mr. Smith meets the first requirement because he was 62 years old at the time of his termination. *See* 29 U.S.C. § 631(a) (extending protection of ADEA to individuals between 40 and 70 years of age). However, he fails the second prong of the test. As discussed above, Smith concedes that he was unable to continue working in the light assembly department as of May, 1992, and it is undisputed that he did not work for Midland Brake at all between May 1992 and the time of his discharge in March 1993. Thus, he cannot meet the requirement of "satisfactory work." The ADEA does not require employers to provide any sort of accommodations for employees who become unable to perform their jobs. We agree with the district court's holding that there is no genuine issue of material fact as to the plaintiff's ADEA claim and affirm the grant of summary judgment in favor of the defendant on that claim.

### 3. Retaliatory Discharge Claim

█ Finally, Mr. Smith claims that, in violation of Kansas law and public policy, the defendant terminated him in retaliation for his filing of workers' compensation claims. Again, the undisputed fact that Mr. Smith

---

10. Even in those cases where the ADA may require the employer to consider reassignment as a reasonable accommodation, there are limits to the employer's obligation. For example, an employer is not required to create a new position for the plaintiff or to bump another employee in order to create a vacancy. *See White,* 45 F.3d at 362.

11. Mr. Smith ultimately opted not to take the disability benefits after being informed by the SSA that he would benefit financially by declining the award of disability benefits and accepting early retirement benefits instead.

was unable to perform his old job is dispositive. Under Kansas law, an employee with a workers' compensation claim may be lawfully discharged and cannot maintain a retaliatory discharge action if he is unable to perform his work. *See Rowland v. Val–Agri, Inc.*, 13 Kan.App.2d 149, 766 P.2d 819, 822 (1988) (rejecting retaliatory discharge claim of employee who could no longer perform his job). Plaintiff's physical inability to perform the job from which he was terminated precludes him from prevailing on a retaliatory discharge claim. Thus, we affirm the entry of summary judgment for defendant on the retaliatory discharge claim.

### CONCLUSION

Mr. Smith concedes that he is unable to perform the job from which he was terminated. Because he cannot perform the essential functions of that position, with or without reasonable accommodation, he does not qualify for protection under the ADA. Furthermore, his undisputed inability to perform his job prevents him from establishing a prima facie case of age discrimination under the ADEA and also prevents him from claiming he was illegally discharged in retaliation for his worker's compensation claim. Thus, we **AFFIRM** the district court's entry of summary judgment for the defendant on plaintiff's ADA claim, his ADEA claim, and his claim of retaliatory discharge.

BRISCOE, Circuit Judge, concurring and dissenting:

I concur in the majority's conclusion that the district court correctly rejected Smith's ADEA and state law retaliatory discharge claims. After some additional clarification, I also agree with the majority's conclusion that the district court erred in concluding Smith was judicially estopped from bringing his ADA claim because he filed a claim for social security disability. However, I respectfully dissent from the majority's conclusion that under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job which he currently holds ..., the employing entity has no obligation to consider reassigning him to another position. Under the current EEOC guidelines, the employer's obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.

I would conclude the ADA requires an employer to consider reassignment to a vacant position when the employee cannot perform his current job at all or can only perform it with accommodation that poses undue hardship to the employer. There is no statutory language, legislative history, case law, or administrative interpretation limiting reassignment to employees who can perform their current jobs only with accommodations that cause the employer undue hardship.

The majority's conclusion is contrary to the statutory language of the ADA. The ADA prohibits discrimination in employment against qualified individuals with disabilities. Title 42 U.S.C. § 12112(a) provides no employer covered by the Act "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee," unless the employer can demonstrate the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir.1996). Title 42 U.S.C. § 12111(9)(B) provides examples of reasonable accommodation:

> The term *"reasonable accommodation" may include—*
>
> . . .
>
> (B) job restructuring, part-time or modified work schedules, *reassignment to a vacant position*, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

(Emphasis added.) Title 42 U.S.C. § 12111(8) defines a qualified individual with a disability as one who, with or without reasonable accommodation, can perform the essential functions of "the employment position that such individual holds or desires."[1]

The phrase "the employment position that such individual ... desires" is broad enough to include vacant positions available for reassignment to current employees as well as positions sought by applicants. Thus, under the plain language of the ADA, an employee who is unable to perform the essential functions of the job he currently holds with or without reasonable accommodation, but who is able to perform the essential functions of a vacant position with or without reasonable accommodation, is a qualified individual with a disability. *See Daugherty v. City of El Paso,* 56 F.3d 695, 698–99 (5th Cir.1995). In *Daugherty,* the city argued because plaintiff could no longer perform his current job, he was not a qualified individual with a disability and the city had no duty to accommodate him by reassignment to a vacant position. The court rejected the city's argument:

> Contrary to the city's position, we do not read the statutory reference to employment an individual "desires" as applicable only to job applicants. Instead, we read this language as extending to individuals like Daugherty who are already employed and then become disabled, since the broad prohibition against discrimination found in 42 U.S.C. § 12112(a) extends not only to hiring and job application procedures, but to advancement, discharge of employees, "and other terms, conditions, and privileges of employment."

56 F.3d at 699.[2]

The majority notes the EEOC's interpretive guidelines are not controlling authority, *see Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986), but treats one isolated sentence in the guidelines as determinative of this reassignment issue: "In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship [to the employer]." 29 C.F.R. § 1630.2(*o*) (App.). However, the guidelines go on to state: "An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." *Id.* It is clear from this second statement that the EEOC also regards reassignment as an option if the employee cannot perform his current job at all.

The majority reads this language to mean employers may *voluntarily* reassign employees who are unable to perform their jobs because of disability. The second statement says nothing about what employers may *voluntarily* do, but rather it *limits* what employers may do; it permits an employer to reassign an employee to a *lower-graded* position only if there are no accommodations that would enable the employee to remain in his current position and there are no vacant equivalent positions for which the employee is qualified. If such vacant equivalent positions exist, the employer cannot reassign the employee to a lower-graded position but must reassign the employee to a vacant equivalent position.

Read together, and in light of the statutory language and purpose of the ADA, the guidelines' discussion of the ADA's express statutory reassignment provision shows the EEOC interprets the ADA as requiring an employer to consider reassignment when the employee cannot perform his current job at all or can only perform it with accommodation that poses undue hardship to the employer. This is the interpretation in the EEOC's own Title I Technical Assistance Manual (1992). Section I–3.10(5) provides:

> Reassignment to a Vacant Position
>
> In general, *the accommodation of reassignment should be considered only when*

---

1. The EEOC regulations use the same language. Like the statute, 29 C.F.R. § 1630.2(m) uses the phrase "the employment position such individual ... desires," and subsection (*o*) expressly provides that reasonable accommodation may include reassignment to a vacant position.

2. The court went on to conclude it would be unduly burdensome for the city to reassign Daugherty because the city charter gave part-time employees like Daugherty lower priority than full-time employees to vacant positions. 56 F.3d at 699–700.

an accommodation is not possible in an employee's present job, or when an accommodation in the employee's present job would cause an undue hardship. Reassignment also may be a reasonable accommodation if both employer and employee agree that this is more appropriate than accommodation in the present job.

. . . .

Reassignment may be an appropriate accommodation when an employee becomes disabled, when a disability becomes more severe, or when changes or technological developments in equipment affect the job performance of an employee with a disability. *If there is no accommodation that will enable the person to perform the present job, or if it would be an undue hardship for the employer to provide such accommodation, reassignment should be considered.*

. . . .

Reassignment should be made to a position equivalent to the one presently held in terms of pay and other job status, if the individual is qualified for the position and if such a position is vacant or will be vacant within a reasonable amount of time. . . . *An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no positions vacant or soon to be vacant for which the employee is qualified (with or without an accommodation).*[3]

The interpretation in *Daugherty* and in the Technical Assistance Manual is consistent with the statutory language and legislative history of the ADA. The legislative history of the ADA indicates Congress intended reassignment to be an option whenever a disability renders an employee unable to perform his current job.

Reasonable accommodation may also include reassignment to a vacant position. *If an employee, because of his disability,* can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and the employer from losing a valuable worker. Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is considered. The Committee also wishes to make clear the reassignment need only be to a vacant position— "bumping" another employee out of a position to create a vacancy is not required.

H.R.Rep. No. 485(II), at 63 (1990) (emphasis added). *See also* S.Rep. No. 116 at 6 (1989).

This interpretation is consistent with the structure of the ADA. There is no basis for distinguishing between an employee who cannot perform his current job at all, even with reasonable accommodation, and one who can perform his current job only with accommodation that poses undue hardship to the employer. Under the ADA, the employer is not obligated to accommodate either employee in his *current* position. However, reassignment to a vacant position is one of the many potential reasonable accommodations expressly listed in the statute.

This interpretation is also consistent with the expressed intent of Congress that the same standards should apply in determining whether the employment provisions of the Rehabilitation Act and the ADA have been violated. *See* 42 U.S.C. §§ 12117(b) and 12201(a). Before the 1992 amendments, the Rehabilitation Act, unlike the ADA, did not expressly provide that reasonable accommodation may include reassignment to a vacant position. The 1992 amendments incorporated the ADA standards on employment discrimination. *See* 29 U.S.C. §§ 791(g) and 794(d). The regulations implementing the amendments expressly provide for reassignment when an employee becomes unable to perform the essential functions of his or her

---

**3.** *See also* the example in Section I–3.4: "If an employee whose job requires driving loses her sight, reassignment to a vacant position that does not require driving would be a reasonable accommodation, if the employee is qualified for that position with or without an accommodation." The EEOC booklet, *Your Responsibilities As An Employer* (1992), advises employers that "[w]hen an employee with a disability is unable to perform her present job even with the provision of a reasonable accommodation, you must consider reassigning the employee to an existing position that she can perform with or without a reasonable accommodation."

job even with reasonable accommodation. *See* 29 C.F.R. § 1614.203(g); *see also Woodman v. Runyon,* 132 F.3d 1330, 1338–39 (10th Cir.1997). That is the ADA standard.

In *White v. York Int'l Corp.,* 45 F.3d 357, 361–62 (10th Cir.1995), this court recognized reasonable accommodation under the ADA, but did not limit its applicability to situations where the employee could perform his current job only with accommodation that imposes undue hardship on the employer. In *White,* the employee was unable to perform his current or former jobs at all, but the court did not reject reassignment for that reason. Instead, the court rejected reassignment as a reasonable accommodation because the employer established there were no vacant equivalent positions the employee could perform. *See also Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124–25 (10th Cir.1995) (plaintiffs unable to perform essential functions of current jobs failed to establish transfer to other positions was reasonable accommodation because they failed to show equivalent jobs were vacant and because they were not entitled to transfer under collective bargaining agreement).

As in *White,* we should look first to whether Smith can perform the essential functions of the job he held when he became disabled, with or without reasonable accommodation. If he cannot, we should then look to possible reassignment to another position and whether he could perform the essential functions of that position with or without reasonable accommodation.

Moreover, as argued by Smith, some of the authority relied on by the majority is suspect. In *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995), an ADA case, the court stated: "This circuit has made it clear ... that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position." The *Myers* court cited *Guillot v. Garrett,* 970 F.2d 1320, 1326 (4th Cir.1992), a Rehabilitation Act case which held reasonable accommodation under the pre–1992 version of the Act did not include reassignment to a vacant position. In *Myers,* the court appeared simply to follow *Guillot* without considering the statutory language of the ADA and its differences with the language of the pre–1992 Act. *See Gile v. United Airlines, Inc.,* 95 F.3d 492, 498 (7th Cir.1996). However, in *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 350 n. 4 (4th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997), the court explained *Myers* did not hold that reassignment to a vacant position can never be a reasonable accommodation under the ADA, noting such a conclusion would be contrary to congressional direction. To the extent *Myers* stands for the proposition that reassignment cannot be a reasonable accommodation under the ADA, it should not be followed in this circuit.

In *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800 (5th Cir.1997), the court concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him. The court concluded reassignment of a worker who could not perform his old job was not a reasonable accommodation because it would violate other workers' rights under a collective bargaining agreement and because the worker failed to show any of the requested positions were vacant or that he was otherwise qualified for them. 117 F.3d at 810.

We have found no other court that has recognized reassignment as a reasonable accommodation and then adopted the limitation on reassignment adopted by the majority. *See, e.g., Gile,* 95 F.3d 492; *Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1114–15 (8th Cir.1995); *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1103 (S.D.Ga.1995); *see also, Aka v. Washington Hospital Center,* 116 F.3d 876, 890, *vacated and rehearing en banc granted* 124 F.3d 1302 (D.C.Cir.1997).

Contrary to the majority's suggestion, requiring employers to accommodate disabled employees by reassignment to vacant positions does not constitute affirmative action beyond the congressional intent of the ADA. The majority relies on *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), where the Court held the Rehabilitation Act does not require employers to take affirmative action in favor

of disabled employees that would fundamentally alter employers' programs. However, in *Alexander v. Choate*, 469 U.S. 287, 300 n. 20, 105 S.Ct. 712, 720 n. 20, 83 L.Ed.2d 661 (1985), the Court distinguished between affirmative action that would require fundamental changes in a recipient's program and an employer's affirmative obligation under the Act to provide changes that would be reasonable accommodations. In *School Board of Nassau County v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987), another Rehabilitation Act case, the Court explained: "Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee." Under the Act in effect at that time, employers were "not required to find another job for an employee who is not qualified for the job he or she was doing," but could not "deny· an employee alternative employment opportunities reasonably available under the employer's existing policies." *Id.*

This case arises under the ADA, not the pre–1992 Rehabilitation Act. The ADA expressly prohibits discrimination against a qualified employee with a disability and defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations" of the employee unless the employer can demonstrate the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). Unlike the pre–1992 Rehabilitation Act, the ADA expressly provides reasonable accommodation includes reassignment to a vacant· position. Under the express terms of the ADA, failure to offer an employee whose disability renders him unable to perform his current job reassignment to a vacant position he is qualified to perform is prohibited discrimination. Holding an employer liable for that failure is not affirmative action beyond what Congress intended, but merely enforcement of the express statutory prohibition against discrimination by failure to make reasonable accommodation.

Requiring employers to reassign disabled employees who can no longer perform their old jobs to vacant positions they can perform is not preferential treatment beyond the congressional intent of the ADA. In *Daugherty*, the city manager testified that reassigning plaintiff, who was a part-time worker, to a full-time position for which a full-time worker had priority under the city charter would likely have led to a lawsuit by the full-time employee. The court's statement that the ADA does not require that disabled persons be given priority in reassignment over those who are not disabled must be read in this context. *Daugherty* holds there is no duty to accommodate disabled employees by reassigning them to positions to which other employees have a prior claim. Under those circumstances, reassignment would allow a disabled employee to "bump" a worker with a prior claim to the position, which is contrary to the intent of Congress. *Daugherty* is inapplicable where no other employee has a prior claim to a position to which a disabled employee seeks reassignment.

Here, there is no city charter giving other employees priority to positions and there is no evidence of a collective bargaining agreement. Reassigning Smith to a vacant position would not give him priority over any other employee who is not disabled.

I agree with the majority that Smith is not estopped from bringing his ADA claim. However, because the employer had the duty to provide reasonable accommodation by reassigning Smith to a vacant position for which he was qualified, it is necessary to decide the effect of Smith's statements in support of his social security disability claim. Here, Smith's representation that he was "totally disabled and unable to work" does not by itself justify summary judgment for the employer on the ground that Smith was not qualified for any of the vacant positions he identified.

Total disability within the meaning of the Social Security Act is not inconsistent with being qualified under the ADA for a job with one employer that could be specifically tailored for the employee . through reasonable accommodation. A person is disabled when he is not qualified for jobs that exist in significant numbers in the national economy. 42 U.S.C. § 423(d). Reasonable accommodation is not taken into account in determining social security disability. Moreover, the Act permits persons to receive disability benefits while engaged in a period of trial work of up to nine months. 42 U.S.C. § 422(c). Smith's

statement that he was "totally disabled and unable to work" is relevant evidence of inability to work, but is not so conclusive as to justify summary judgment when there is evidence he was able to perform particular positions with the employer. *See Talavera v. School Board*, 129 F.3d 1214, 1217–20 (11th Cir.1997); *Swanks v. Washington Metropolitan Area Transit Auth.*, 116 F.3d 582, 586–88 (D.C.Cir.1997).

Because reasonable accommodation includes reassignment to a vacant position when an employee like Smith cannot perform his current job at all, and because Smith's statement in support of his social security claim does not by itself justify summary judgment, resolution of this case requires examination of the record to determine whether he presented evidence that he could perform any of the identified vacant positions. Smith failed to present evidence that he was physically able or otherwise qualified for many of the positions that became vacant between the time his dermatitis flared up in 1992 and his termination in March 1993. However, there was evidence he was physically able and otherwise qualified for at least two of the positions, a position in "Flexisticks," and a kit assembly position, both of which became vacant in July 1992.

According to Jon Anderson, a registered nurse and Midland's health and safety coordinator, Smith could have performed the essential functions of these two positions with some accommodation. Anderson testified in his deposition that he did not offer these positions to Smith because Smith's physician, Dr. Singer, rated Smith "unable to work" and had not released him to return to work. Anderson thought it would be futile to offer the positions to Smith in July because in June, Dr. Singer had not released him to work in light assembly and Smith had unsuccessfully tried to work in shipping. Although Dr. Singer had rated Smith "unable to work" on his reports to Midland, there was evidence that Anderson and Dr. Singer interpreted the rating to mean Smith was unable to work at his old job and Dr. Singer was unaware of any other jobs Smith could perform with Midland. An "unable to work" rating did not in this case rule out other work. Ordinarily, when a disabled employee's doctor labeled an employee "unable to work," Anderson would contact the doctor if a position became available that Anderson thought the employee could perform. Whether Smith was qualified for or could perform the positions that became vacant in July was a question of material fact.

Midland points out the ADA did not take effect until July 26, 1992, and argues any statutory obligation it has to consider reassignment extends only to positions vacant after that date. *See Smith v. United Parcel Service of America, Inc.*, 65 F.3d 266 (2d Cir.1995); *O'Bryant v. City of Midland*, 9 F.3d 421 (5th Cir.1993). The Flexisticks and kit assembly positions became vacant in July and there is evidence that at least one of the positions remained vacant after the effective date of the ADA. Failure to consider reassignment to a position that remained vacant after the effective date could be a violation of the ADA.

Midland also argues any obligation it has to consider reassignment extends only to positions that become vacant very shortly after an employee becomes disabled. The EEOC's interpretative guidelines state reassignment should be considered only if "the position is vacant within a reasonable amount of time." The guidelines go on to state a reasonable amount of time should be determined "in light of the totality of the circumstances," and give as an example a position that becomes vacant a week after a disabled employee requested reassignment. 29 C.F.R. § 1630.2(*o*) (App.). Here, the two positions in question became vacant approximately two months after Smith became unable to perform his old job. While this is considerably longer than the one-week example, it is not necessarily an unreasonably long time in light of the totality of the circumstances. According to Cathy Lynch, Midland's human resources director, it was not uncommon for employees like Smith, who were on workers' compensation leave, to return to work after a year, and it was company policy to look for vacant positions that injured employees could perform. The company did in fact continue to look for alternative positions for Smith long after May 1992. An issue of material fact remains as to whether it is reasonable to require Midland

to consider reassigning Smith to either of the two positions that became vacant in July.

I would reverse the summary judgment in favor of Midland on Smith's ADA claim. I am in agreement with the balance of the majority's opinion.